[No. F026405. Fifth Dist. May 22, 1998.]

GARY LYNN MILLER, Plaintiff and Appellant, v.
MICHAEL J. MILLER, Defendant and Respondent.

**COUNSEL**

Michael D. Culy for Plaintiff and Appellant.

Tritt & Tritt and James F. Tritt for Defendant and Respondent.

**OPINION**

**LEVY, J.—**

### STATEMENT OF THE CASE AND FACTS

During the marriage of respondent, Michael J. Miller, and Lillian Miller, three children were born to Lillian. The youngest child, Samantha, was born on May 9, 1989. Michael and Lillian separated on November 6, 1991.

Thereafter, Lillian began living with appellant, Gary Lynn Miller. Michael and Gary are brothers. According to Gary, Lillian told him in early 1992 that Samantha was his child.

The judgment dissolving the marriage of Michael and Lillian was entered on February 4, 1993, in Merced County. The judgment granted Michael and

Lillian joint legal and physical custody of the three children. The judgment provided "The children shall reside with Petitioner/Father except for specific periods of time . . . ." These time periods were set forth in detail in the judgment. Michael was further ordered to pay child support for the three children commencing December 1, 1992.

Lillian and Gary have been married since October 9, 1993, and live in Madera County. Between February 1993 and August 1995, Lillian filed three motions in the Merced County action seeking to modify the custody order so as to obtain sole physical and legal custody of the children. These motions were denied. Under the Merced County judgment, Samantha spends approximately 50 percent of her time with Lillian and Gary and approximately 50 percent of her time with Michael.

In December 1995, Gary filed the underlying complaint in Madera County to determine whether a parent and child relationship existed between Michael and Samantha. Michael was named as the defendant. Gary alleged he was Samantha's natural father and sought full legal and physical custody of Samantha. As an exhibit to this complaint, Gary attached "PARENTAGE/ KINSHIP TEST RESULTS" prepared by a laboratory located in Seattle, Washington. Based on an analysis of blood samples taken from Gary, Lillian and Samantha, this laboratory concluded "that it is, for practical purposes, proven that Gary Miller is the biological father of Samantha Miller, assuming that no close biological relative could also be the father."

Michael responded by moving to quash the complaint pursuant to California Rules of Court,[1] rule 1230, on the ground that Gary lacked the legal capacity or standing to bring the paternity action. The trial court agreed. Based on the pleadings, arguments of counsel, and judicial notice of the Merced County dissolution action, the court ruled: (1) Gary did not have the legal capacity and standing to sue under Family Code[2] sections 7630 and 7611; (2) Michael was the natural father of Samantha pursuant to the Merced County judgment (§ 7636); and, (3) Gary had failed to establish he was the presumed father under section 7611. Consequently, the case was dismissed.

Gary contends the trial court erred in that he meets the requirements for presumed father status under section 7611, subdivision (d). Gary argues that, because the evidence supports a finding he received the child into his home and openly held her out as his natural child, he had standing to bring the paternity action under section 7630, subdivision (b), as an "interested party." Gary further asserts it was error to find Michael was Samantha's father based on the presumptions contained in the Uniform Parentage Act.

---

[1] All further rule references are to the California Rules of Court.

[2] All further statutory references are to the Family Code, unless otherwise indicated.

We will affirm the trial court's dismissal of this action on the grounds that Gary failed to both establish presumed father status and rebut the conclusive presumption of Michael's paternity.

## DISCUSSION

### *The Motion to Quash Was Procedurally Proper*

■ It should first be noted that, contrary to Gary's position, Michael followed the proper procedure when he moved to quash the proceeding. Rule 1230, which applies to all actions and proceedings under the Family Code (rule 1205), provides that, within the time permitted to file a response, the respondent may move to quash the proceeding based on petitioner's lack of legal capacity to sue. Unlike other civil proceedings, the motion to quash is not limited to jurisdictional challenges. (Cf. Code Civ. Proc., § 418.10.) Thus, here, Michael permissibly responded to the complaint by seeking to quash the proceeding on the ground Gary did not have standing to pursue an action to determine the existence or nonexistence of a father and child relationship under section 7630.

Further, Gary's concession that an extraordinary writ was the appropriate remedy for seeking review in this case is incorrect. Under rule 1232(b), a trial court's order granting the motion to quash and dismissing the proceeding is appealable on "the question as to whether the court abused its discretion in making the order."

### *The Paternity Action Was Properly Dismissed*

■ On the merits, two hurdles exist which Gary must overcome before he can prevail. First, the trial court found Gary failed to establish presumed father status. Second, by virtue of section 7540, Michael is conclusively presumed to be Samantha's father. This presumption can be rebutted only under limited circumstances. (§ 7541.)

Section 7611 sets forth the conditions a man must meet before he is presumed to be the natural father of a child. In this case, Gary is relying on subdivision (d), the only subdivision which is potentially applicable. That subdivision provides a man is presumed to be the father of a child if he "receives the child into his home and openly holds out the child as his natural child."

Under section 7630, subdivision (b), any interested party may bring an action to determine the existence of the father and child relationship presumed under section 7611, subdivision (d). This is in contrast to section

7630, subdivision (a), which limits the class of men who can bring actions to declare the existence of the father and child relationship pursuant to section 7611, subdivisions (a), (b), and (c), to the presumed fathers. Thus, a broad class of men, including " 'alleged' " fathers, can bring an action to establish paternity when such claim is based on the presumed father status which is obtained by receiving the child and openly acknowledging paternity. (*Robert J. v. Leslie M.* (1997) 51 Cal.App.4th 1642, 1646 [59 Cal.Rptr.2d 905].) Therefore, Gary, as an interested party, had standing to pursue a claim premised on the section 7611, subdivision (d) presumption.[3]

However, in addition to finding Gary lacked standing to bring the action, the trial court determined Gary had failed to establish he was the presumed father under section 7611. Thus, the trial court found against Gary on the merits of his claim.[4] The trial court was correct. Based on the statutory presumptions, Gary cannot prevail on the merits as a matter of law.

To obtain the benefit of section 7611, subdivision (d), the man must establish by a preponderance of the evidence that the two elements necessary to invoke the presumption are present, i.e., reception into the man's home and an open and public acknowledgment of paternity. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652 [56 Cal.Rptr.2d 524].) Thus, the burden of proof rested on Gary to demonstrate the existence of these two elements. It was for the trial court to determine whether these foundational facts were established by a preponderance of evidence. (*Id.* at p. 1653.)

Gary argues the trial court's finding that he failed to establish he was the presumed father is not supported by substantial evidence. In reviewing such a challenge, the appellate court must review the facts most favorably to

[3]In the recent case of *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932 [72 Cal.Rptr.2d 871, 952 P.2d 1139], the California Supreme Court noted this contrast between section 7630, subdivision (a) and subdivision (b). There, the alleged biological father was attempting to establish the existence of a father and child relationship without having ever lived with the child. In this situation, the court stated that "arguably," the alleged biological father would qualify as an " 'interested' " party for purposes of bringing an action under section 7611, subdivision (d). (17 Cal.4th at p. 938, fn. 5.) However, after raising this issue, it was unnecessary to resolve it. Unlike this case, in *Dawn D.* there was no factual basis to support an allegation of presumed father status under section 7611, subdivision (d).

[4]The trial court further found that, based on the Merced County dissolution judgment, Michael was the natural father of Samantha pursuant to section 7636. This section provides the judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes with one exception not applicable here. However, section 7636 refers to orders made pursuant to actions brought under section 7630. Thus, it is questionable whether the dissolution judgment naming Michael as Samantha's father is determinative by virtue of section 7636. (Cf. *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1846-1847 [38 Cal.Rptr.2d 18].) Nevertheless, it is unnecessary to decide this issue in ruling on this appeal.

the judgment, drawing all reasonable inferences and resolving all conflicts in favor of the order. "We do not reweigh the evidence but instead examine the whole record to determine whether a reasonable trier of fact could have found for the respondent." (*In re Spencer W., supra,* 48 Cal.App.4th at p. 1650.)

■ Gary asserts he has established the first prong of the presumed father test in that Samantha lives with him approximately one-half of the time. Gary notes he and Lillian began cohabiting in November 1991, and he has received Samantha into his home since that time. Gary emphasizes that Samantha has her own room containing her toys and clothes in his home.

However, contrary to Gary's interpretation, this living situation does not support Gary's position. Samantha has lived with Gary approximately one-half of the time because Gary has been living with Samantha's mother, Lillian. As Samantha's stepfather, Gary would have Samantha in his home regardless of any paternity claim.

Gary argues he meets the second element required for presumed father status because ever since he learned of his paternity in 1991, he has continuously acknowledged that Samantha is his child. However, the record belies this assertion.

The judgment dissolving Lillian and Michael's marriage, which listed Michael as Samantha's father and stated Samantha was to reside with Michael, was filed in February 1993. Although this judgment was entered over one year after Gary was told he was Samantha's father, Gary did not assert his paternity claim either before or at that time. Further, pursuant to the dissolution judgment, Michael pays child support for Samantha without objection from Gary. Finally, Gary waited until December 1995 to file the complaint to establish paternity, over six years after Samantha was born and over four years after allegedly being told of Samantha's parentage. These facts run counter to Gary's claim that he has openly held out Samantha as his child since 1991. Thus, the trial court's finding that Gary did not meet the requirements of section 7611, subdivision (d), is supported by substantial evidence.

■ Additionally, the conclusive presumption of paternity established by section 7540 applies to Michael. Under the facts of this case, Gary cannot employ the exception to this section to rebut the conclusive presumption. (§ 7541.)

Section 7540 states "Except as provided in Section 7541, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." Section 7541, subdivision

(a), allows this conclusive presumption to be rebutted by requiring the court to determine paternity in accordance with "the conclusions of all the experts, as disclosed by the evidence based on blood tests . . . ." However, section 7541, subdivisions (b) and (c) limit who may make a motion for blood tests to the husband, the child, the mother and the "presumed father" as defined in sections 7611 and 7612 and require the motion to be filed not later than two years from the child's date of birth. Further, the blood tests must be "made by experts qualified as examiners of blood types who shall be appointed by the court." (§ 7552.)

Gary concedes that Michael satisfies the conclusive presumption requirements of section 7540. Nevertheless, Gary contends he has rebutted this presumption through the blood test results he submitted as part of his complaint. However, these blood test results cannot override the conclusive presumption of section 7540 because the tests were not authorized by section 7541. The tests were neither ordered by the court nor performed by court appointed experts. (§§ 7551 & 7552.) As a result, these tests have no legal significance. Further, the tests were not performed within two years of Samantha's birth and thus were untimely. Finally, Gary does not have standing to request blood tests because, as discussed above, he is not a presumed father within the meaning of section 7611.

Therefore, the conclusive presumption of paternity applies to Michael as a matter of law. Consequently, whether or not Gary is in fact Samantha's biological father is immaterial. ■ This conclusion reflects the ancient principle that " ' "[t]he husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant." [Citation.]' " (*Susan H.* v. *Jack S.* (1994) 30 Cal.App.4th 1435, 1439 [37 Cal.Rptr.2d 120].) This rule promotes important social policies including preservation of the integrity of the family and protection of the welfare of children. Especially pertinent here is the promotion of the state's interest " 'in preserving and protecting the developed parent-child and sibling relationships which give young children social and emotional strength and stability' " notwithstanding the termination of the mother's marital relationship with the presumed father. (*Susan H.* v. *Jack S., supra,* 30 Cal.App.4th at pp. 1442-1443.)

■ Gary further argues the presumption of paternity in favor of Michael deprives him of his substantive due process right to establish that he is Samantha's biological father. However, a due process challenge to the conclusive presumption that the husband is the father of a child conceived during the marriage was rejected by the California Supreme Court based on strikingly similar facts in *Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354 [216 Cal.Rptr. 748, 703 P.2d 88].

In *Michelle W.* v. *Ronald W.*, the presumed father, Ronald, was married to the mother at the time of the child's birth and for four years thereafter. The couple divorced and the mother married the putative father, Donald. The dissolution judgment gave the mother primary custody of the child. Thus, the child lived in Donald's home and Donald held the child out to be his natural child. In this situation the court held that Donald's abstract interest in establishing he was the child's legal father was overridden by the established and continuing emotional and financial father-daughter relationship between the child and the presumed father. Consequently, the court concluded the application of the conclusive statutory presumption comported with the requirement of due process of law. (39 Cal.3d at pp. 363-364.)

Similarly, here, Michael has established an emotional and financial father-daughter relationship with Samantha. Thus, Gary's private interest in establishing a parent and child relationship based on alleged biological father status is overridden by the state interests in familial stability and the best interest of the child.

### Attorney Fees

■ Michael requests he be awarded attorney fees on the ground this appeal is frivolous. Michael argues the history of the case suggests an improper motive of harassment on the part of Gary. Alternatively, Michael submits the arguments make it clear that no reasonable attorney would have pursued this appeal.

Michael has not offered any specific evidence of objective bad faith. However, we have great concern about the impact this action may have had on Samantha's social and emotional well-being. We note that Gary instituted this action many years after Samantha established a strong parent-child relationship with her presumed father. Nevertheless, we will reluctantly defer to the trial court's finding that the "action was not frivolous, but done in good faith."

Further, although Gary cannot ultimately prevail on the merits of his complaint, he had a valid point on appeal. The trial court did not acknowledge Gary as an "interested party" under section 7630, subdivision (b). Thus, it is not clear that ". . . any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Consequently, Michael's request for attorney fees is denied.

## DISPOSITION

The judgment is affirmed. Respondent's request for attorney fees is denied; respondent is awarded costs on appeal.

Ardaiz, P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied August 19, 1998.