[No. B182232. Second Dist., Div. Eight. Jan. 23, 2007.]

FOUAD SAID, Plaintiff and Appellant, v.
HENRIETTA JEGAN et al., Defendants and Respondents.

Counsel

Jaffe & Clemens, Daniel J. Jaffe, Aimee H. Gold; Greines, Martin, Stein & Richland, Robin Meadow and Dana Gardner Adelstein for Plaintiff and Appellant.

Glen H. Schwartz and Larry M. Hoffman for Defendants and Respondents.

Opinion

**RUBIN, J.**—Fouad Said appeals from the summary judgment denying his petition to determine that he is not the father of Fouad Samir Said (Fam. Code, § 7630, subd. (b)) on the ground that he lacked standing as a presumed father to maintain such an action. Because he presented sufficient evidence to show he might qualify as the presumed father (Fam. Code, § 7611, subd. (d)), we hold that the trial court erred and reverse the judgment.

## FACTS AND PROCEDURAL HISTORY

Fouad Said (appellant) and Henrietta Jegan obtained a California divorce judgment in December 1977. At the time, they had a seven-year-old daughter named Suna. In April 1979, Jegan gave birth to a son—Fouad Samir Said—and named appellant as the father on Fouad's birth certificate.[1] In April 2003—immediately before Fouad's 24th birthday—appellant filed a petition to remove his name from Fouad's birth certificate, alleging that he was "erroneously" listed as the father. The petition was prepared on a form denominated as one to establish parentage under Family Code section 7630, which is part of the Uniform Parentage Act. (Fam. Code, § 7600 et seq.)[2] Respondents filed a response that denied appellant's allegations, and raised several affirmative defenses, including estoppel, and that appellant and Jegan "are married under the laws of Islam and other jurisdictions."

In May 2004 appellant filed a motion to compel Fouad to submit to DNA testing. The motion was supported by appellant's declaration, which stated

---

[1] We will refer to Fouad Samir Said as Fouad, and to Fouad and Jegan collectively as respondents.

[2] All further undesignated section references are to the Family Code.

that appellant moved from Los Angeles to Saudi Arabia in 1974, shortly after his marriage to Jegan. He and Jegan separated in 1975, and their divorce became final in December 1977. In 1978, appellant married his current wife. He lived in Saudi Arabia until 1986, and since then has lived in Switzerland. He and Jegan did not live together or have sexual relations after their divorce. According to appellant, he learned at some unspecified time that he was listed as Fouad's father on Fouad's birth certificate. He never authorized Jegan to do so. He was in Saudi Arabia when Fouad was conceived and born. Because he was not Fouad's father, appellant asked that his name be removed from Fouad's birth certificate and that the court find he was not the father.

Respondents then moved for summary judgment, contending that appellant lacked standing to bring his petition under section 7630. According to respondents, only a presumed father as defined by section 7611, subdivision (d) had standing to bring the petition.[3] Because appellant's declaration denied the existence of any facts that would qualify him as a presumed father under subdivision (d), and because appellant could not contradict his sworn statements, respondents conceded the truth of those statements only for purposes of their summary judgment motion, and asked the trial court to enter judgment for them. Appellant opposed the motion, contending the trial court should consider declarations and other evidence from respondents showing they alleged facts which, if true, would qualify appellant as Fouad's presumed father under section 7611, subdivision (d).[4]

The trial court granted the summary judgment motion and entered judgment for respondents, finding that appellant's sworn statements concerning his lack of any relationship with Fouad precluded appellant from establishing he was Fouad's presumed father. As a result, the trial court ruled, appellant lacked standing to bring his petition.[5]

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

---

[3] Other circumstances may be used to determine whether someone is a presumed father (see § 7611, subds. (a)–(c), (e), (f)), but the parties agree that none is applicable here. The parties have confined their analysis to presumed father status under section 7611, subdivision (d), which we discuss in detail, *post.*

[4] In his summary judgment opposition brief, along with his reply brief in support of his motion to compel DNA testing, appellant divulged the true motivation for his petition: Under Swiss law, he could not disinherit a child, and he needed a determination of nonpaternity in order to complete his will and preclude an heirship claim by Fouad.

[5] The trial court originally denied the summary judgment motion and granted appellant's motion for DNA testing, but later granted respondents' motion for reconsideration and reversed its earlier rulings. Appellant does not contest the propriety of that order.

In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ To the extent we interpret a statute based on undisputed facts, we are not bound by the trial court's interpretation, and instead decide the correct meaning as a matter of law. (*Travelers Indemnity Co. v. Maryland Casualty Co.* (1996) 41 Cal.App.4th 1538, 1543 [49 Cal.Rptr.2d 271].) " 'The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' " . . . If the language of a statute is clear, we

should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' . . . Statutes must be harmonized both internally and with each other." (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643], citation omitted.)

## DISCUSSION

### 1. *Relevant Provisions of the Uniform Parentage Act*

■ The Uniform Parentage Act provides the framework for judicial determinations of paternity. (*Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937 [72 Cal.Rptr.2d 871, 952 P.2d 1139] (*Dawn D.*); § 7610, subd. (b).) Under section 7611, subdivision (a), a man is presumed to be the father of a child born during, or within 300 days after the termination of, his marriage to the child's mother. Presumed father status also arises if, combined with other circumstances, the man married or attempted to marry the birth mother before (§ 7611, subd. (b)), or after (§ 7611, subd. (c)) the child's birth. Under section 7611, subdivision (d), the presumption arises if the man "receives the child into his home and openly holds out the child as his natural child." These presumptions are rebuttable by clear and convincing evidence in an appropriate action. (§ 7612, subd. (a).)

Section 7630 provides for actions to determine the existence or nonexistence of a father and child relationship, and also defines who may bring such actions. Section 7630, subdivision (a) states: "A child, the child's natural mother, a man presumed to be the child's father under subdivision (a), (b), or (c) of Section 7611, . . . may bring an action as follows: [¶] (1) At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611. [¶] (2) For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party."

Section 7630, subdivision (b) provides: "Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f)

of Section 7611." Section 7630, subdivision (c) allows for actions to determine the existence of the father and child relationship for children without a presumed father. Those actions may be brought by the child, by the mother, by a man alleged or alleging himself to be the father, and by others.[6]

### 2. *Appellant's Status as an Alleged Father Conferred Standing*

"Standing" is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [28 Cal.Rptr.3d 188] (*Librers*).) Although standing in actions to determine the existence or nonexistence of paternity under section 7630, subdivision (a)(1) and (2) is limited to presumed fathers under section 7611, subdivisions (a) through (c), any interested party may bring an action to determine the existence or nonexistence of paternity when presumed fatherhood under section 7611, subdivision (d) is involved. (*Dawn D., supra,* 17 Cal.4th at p. 938 & fn. 5.) Therefore, section 7630, subdivision (b) vests standing in a broader range of persons than does subdivision (a). (*Dawn D.,* at p. 938 [describing subdivision (b) as contrasting with the restrictive standing requirements of subdivision (a)]; *Librers, supra,* at pp. 124–125.) Once an interested party alleges facts which, if true, would bring him within section 7611, subdivision (d), he has standing under section 7630, subdivision (d) and is entitled to a determination on the merits. (*Librers, supra,* at pp. 124–126.) The term "interested party" includes alleged fathers (*id.* at p. 125), and respondents concede that appellant is an alleged father. (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1270 [284 Cal.Rptr. 18] [man qualified as alleged father because mother stipulated to his paternity in various documents, including the child's birth certificate].)

Even so, respondents contend appellant lacked standing to pursue his action to determine the nonexistence of paternity under section 7630, subdivision (b) because decisions like *Librers* involved petitions to determine the *existence* of paternity under that provision. Relying on *Miller v. Miller* (1998) 64 Cal.App.4th 111 [74 Cal.Rptr.2d 797] (*Miller*), respondents contend that appellant had to both allege and prove he was Fouad's presumed father under section 7611, subdivision (d) in order to have standing under section 7630, subdivision (b).

---

[6] Appellant also contends that he had standing under section 7630, subdivision (c), arguing that even though by its terms it refers only to actions to determine the existence of paternity, it should be interpreted to apply to nonpaternity actions too. Because we hold that appellant had standing under section 7630, subdivision (b), we need not reach that issue.

The plaintiff in *Miller* sought to establish that he was the presumed father of a child, pursuant to section 7611, subdivision (d) and section 7630, subdivision (b). The trial court granted a motion to quash the paternity petition due to a lack of standing, but also determined that the petitioner was not the presumed father. On appeal, the court held that although the petitioner was not a presumed father, his status as an alleged father gave him standing to pursue the action. However, because the trial court effectively reached the merits of the action by determining the petitioner was not the presumed father, he ultimately failed to prove he was the presumed father under section 7611, subdivision (d), and the judgment was affirmed. (*Miller, supra,* 64 Cal.App.4th at pp. 116–117.) Respondents point to *Miller*'s holding that the paternity petitioner had to prove he was the presumed father in order to prevail, and extrapolate from that the conclusion that the same rule applies in actions to disprove paternity.

■ Respondents' reliance on *Miller* is misplaced. First, instead of helping respondents, *Miller* confirms that an alleged father has standing under section 7630, subdivision (b). *Miller*'s holding in regard to the petitioner's failure to prove his presumed father status had to do with the merits of the action, not his standing to bring it in the first place. Although the *Miller* court did not say so, we read the holding as one based on harmless error because the trial court determined that the petitioner was not the presumed father. Second, respondents' argument produces the absurd result that a man must both plead and prove he *is* the child's presumed father in order to have standing to *disprove* paternity under section 7630, subdivision (b). We therefore decline to read subdivision (b) as respondents urge us to do. (*County of Orange v. FST Sand & Gravel, Inc.* (1998) 63 Cal.App.4th 353, 360 [73 Cal.Rptr.2d 633] ["acid test" of statutory construction is always whether an interpretation yields absurd result].) In cases where a man seeks to prove the existence of paternity under section 7630, subdivision (b), it stands to reason he must allege he is an interested party who can also prove he is a presumed father. (*Librers, supra,* 129 Cal.App.4th at pp. 124–126.) However, when an interested party seeks to prove he is not a child's father under that section, application of the *Librers* rule must necessarily mean that he need only allege facts showing he *might* be the presumed father, then go on to disprove those facts at trial.

We reject respondents' contention that *Librers* applies only to actions to determine the existence of paternity, not to actions to determine its nonexistence. Section 7630, subdivision (b) permits both types of actions and makes no distinction between them when describing their requirements. Respondents offer no reason why decisions interpreting the standing requirement in an

action to determine the existence of paternity have no application to nonpaternity actions under the same provision. We therefore agree with appellant that an alleged father seeking to establish the nonexistence of paternity qualifies as an interested party under section 7630, subdivision (b), so long as he alleges that there are facts, which if believed, show he might qualify as a presumed father under section 7611, subdivision (d).

As noted, respondents concede appellant is an alleged father because he was named as the father on Fouad's birth certificate. They contend that appellant's financial motivation to bar Fouad from claiming he is appellant's biological heir somehow divests appellant of his status as an interested party. They cite no authority for that proposition, however, and we deem it waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].) We alternatively hold that appellant's claimed interest in denying a share of his estate to an alleged interloper only serves to enhance his status as an interested party.[7] Appellant also produced evidence that respondents claimed he was Fouad's presumed father under section 7611, subdivision (d) because appellant acknowledged his paternity and received Fouad into his home. Fouad stated in a declaration that appellant always held himself out as Fouad's father, supported him emotionally and financially his whole life, and visited or vacationed with respondents frequently. Attached to his declaration were photocopies of numerous photographs showing appellant in displays of affection with Fouad and other family members on various occasions. Jegan said in a declaration that despite their divorce, she and appellant continued their marital relationship for many years, with appellant providing financial support for her, Fouad, and Suna. Appellant leased or bought homes for them, and visited them at those homes. They also vacationed together, including time spent with appellant's family.

On appeal, respondents do not contest the sufficiency of those statements, if believed, to prove presumed father status under section 7611, subdivision (d). Instead, they contend as they did below that the trial court could disregard that evidence and hold appellant to his sworn statements that he never acted as a presumed father. They cite just one decision to support this contention: *Fuss v. Superior Court* (1991) 228 Cal.App.3d 556 [279 Cal.Rptr. 46]. They do not cite to any particular page or quote any particular language

---

[7] Respondents also contend that appellant did not provide Swiss legal authority to support his contention that he had to disprove his paternity of Fouad in order to avoid naming him as an heir in his will. They never raised that issue below, and we therefore deem it waived. (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249 [100 Cal.Rptr.2d 403].)

from that decision, and otherwise fail to discuss or analyze its facts and holding. *Fuss* involved standing and other issues under the predecessor version of section 7630, subdivision (a), where a man sought to determine the existence of paternity. It did not arise in the context of a summary judgment motion and there was no issue raised about the inability of a petitioner to rely on the other party's declarations. We therefore deem the issue waived for failure to cite relevant authority. (*Landry v. Berryessa Union School Dist., supra,* 39 Cal.App.4th at pp. 699–700.)[8]

Finally, respondents contend, as they did below, that under *Robert J. v. Leslie M.* (1997) 51 Cal.App.4th 1642 [59 Cal.Rptr.2d 905] only a presumed father can bring a section 7630 action to determine nonpaternity. Citing to section 7630, subdivisions (b) and (c), the *Robert J.* court said that section 7630 "allows a broad class of men, including 'alleged' fathers, to bring an action to establish paternity." (*Robert J., supra,* at p. 1646.) Respondents apparently base their contention on that passage, concluding that under *Robert J.,* alleged fathers may bring actions under section 7630 to determine only the existence, not the nonexistence, of paternity. However, *Robert J.* was decided under section 7630, subdivision (a)(2), where standing is expressly limited to presumed fathers pursuant to section 7611, subdivisions (a) through (c). (*Robert J., supra,* at pp. 1645, 1646.) As part of the comment about actions to determine paternity under section 7630, subdivisions (b) and (c), the *Robert J.* court cited to section 7630, subdivision (a)(2), for the proposition that section 7630 "expressly limits standing to presumed fathers in actions to establish nonpaternity." (*Robert J., supra,* at p. 1646.) Section 7630, subdivision (c) allows an alleged father and other specified persons to bring an action to determine only the existence, not the nonexistence, of the parent-child relationship in cases where the child has no presumed father. Because section 7630, subdivision (b) applies to actions to both determine and preclude paternity, and because the case before it was an action to determine the existence of paternity, it appears to us that the *Robert J.* court simply conflated subdivisions (b) and (c) and unintentionally ignored the fact that actions under subdivision (b) may also determine the nonexistence of paternity. Regardless, its statements about the scope of subdivision (b) are dicta, and its holding applies to only subdivision (a)(2) of section 7630.[9]

---

[8] We do acknowledge the general rule that a party opposing a summary judgment motion may be judicially estopped by statements made in a sworn declaration. (*Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 612–613 [135 Cal.Rptr.2d 131].) We doubt its application here, where appellant must disavow paternity, but also allege facts showing there is a basis for claiming he is a presumed father.

[9] At oral argument, respondents suggested that, since appellant's interest in establishing nonpaternity was born out of his desire to insure Fouad would not inherit under Swiss law, that determination could simply wait until appellant's death. A man alleged to be another's father hopefully would have an interest in resolving that claim during the man's lifetime. The

## DISPOSITION

For the reasons set forth above, the judgment is reversed. Appellant is awarded his costs on appeal.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied February 15, 2007.

---

inheritance issue aside, one might expect that if appellant is Fouad's father he would care to develop an appropriate father-son relationship, and would not be satisfied with a posthumous determination of paternity.