Filed 6/5/14  Mindy W. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MINDY W., | |
| Petitioner, | E060658 |
| v. | (Super.Ct.No. FAMVS1302754) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| TRENTON S., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Alexander R. Martinez, Judge.  Petition granted.

Walker Trial Lawyers, Barry M. Walker and Amy M. Oakden for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

1

In granting this petition, we hold that the trial court erred when it ordered genetic testing in a paternity action in the absence of a determination that the putative father was a presumed father.  Accordingly, we grant the petition for writ of mandate brought by the mother to vacate the order for genetic testing.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Trenton S. (real party) has filed an action for child custody and visitation of Z.W., born in July 2012.  He claims that the mother (petitioner) was living with him at the time of conception and birth, but that she has "abducted" the child and is now living with her husband.  He also claims that a DNA test was performed by a private company showing Z.W. is his child.

Petitioner denied that she ever lived with real party or that she even had a relationship with him.  She claims that he has been stalking her, and that he and his mother had to be removed from the hospital during the delivery of her child.  She further asserts that the DNA tests were falsified because real party never had access to Z.W., and so could not have obtained blood or saliva from her to perform the test.  In fact, names of the man and the child are handwritten on the lab report.

---

[1] The court has read and considered the record in this proceeding and the petition. We have invited the real party to file a response, but he has failed to do so.  We have concluded that an alternative writ would add nothing to the presentation already made and would cause undue delay in resolving this matter.  We therefore issue a peremptory writ in the first instance.  (Code Civ. Proc., § 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222-1223, disapproved on another ground in *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 724, fn. 4.)

Finally, petitioner declares that she has been cohabiting with her husband at all times, he is not sterile or impotent and, thus, he is conclusively presumed to be the father of Z.W.

Petitioner and real party attended a family court services mediation at which the counselor recommended DNA testing. At the subsequent hearing, the trial court opined that petitioner should not object since she denies any relationship with real party. It noted that under *In re Levi H.* (2011) 197 Cal.App.4th 1279, if a child has both an alleged biological father whose paternity is at issue and a presumed father, a court must hold an evidentiary hearing on the issue of biological paternity. It ordered the genetic testing since it is within two years of the birth of Z.W.

## DISCUSSION

Petitioner seeks to vacate the order for genetic testing and to stay a subsequent evidentiary hearing on the issues of child custody and visitation, contending that the trial court erred in ordering genetic testing in that absence of a finding that real party is a presumed father. We agree.

Family Code[2] section 7540 states: "Except as provided in Section 7541, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."

---

[2] All further statutory references shall be to the Family Code, unless otherwise stated.

Section 7541 reads in part: "(a) Notwithstanding Section 7540, if the court finds that the conclusions of all the experts, as disclosed by the evidence based on blood tests performed pursuant to Chapter 2 (commencing with Section 7550), are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly.

"(b) The notice of motion for blood tests under this section may be filed not later than two years from the child's date of birth by the husband, or for the purposes of establishing paternity by the *presumed* father or the child through or by the child's guardian ad litem. As used in this subdivision, '*presumed father*' has the meaning given in Sections 7611 and 7612." (Italics added.)

Section 7611, subdivision (d), defines a presumed father as one who receives the child into his home and openly holds out the child as his natural child.

"[T]he only parties who may seek blood tests under section 7541 are the husband, the child, or a man who is a presumed father within the meaning of section 7611. (§ 7541, subd. (b).) Thus, when a man who is not a presumed father within the meaning of section 7611 seeks to establish his paternity, the trial court may not order blood tests under section 7541 to defeat the conclusive presumption in section 7540. (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 239-240.) This is because biological paternity is not a relevant factor in determining presumed father status under section 7611." (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 585-586.)

4

Based on petitioner's declaration, her husband is conclusively presumed to be Z.W.'s father unless blood tests demonstrate otherwise. In any case, real party has no standing to demand a blood test under section 7541 unless he is determined to be a presumed father. At this point, he only claims to be the father, but a putative father is not synonymous with presumed father. Before the trial court ordered genetic tests, it should have determined whether real party is a presumed father. In this case, that means it would have to hold a hearing to determine the truth of his allegations that petitioner and Z.W. lived with him and he held out Z.W. as his child.

The *Levi* case cited by the court is distinguishable because there the presumed father filed a voluntary declaration of paternity with the department of child services.

*Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240 involved an alleged biological father who sought to establish a parent-child relationship with twins conceived and born to the mother while she was married to another man, who had accepted the children as his own. The putative father petitioned to establish paternity, obtain joint custody and reasonable visitation, pay child support, and for genetic testing. He alleged he had established a relationship with the twins *in utero* while he attended to the mother's prenatal care and sang or talked to the unborn children. He complained mother and her husband obstructed his ability to take them into his home. The trial court dismissed the petition because he lacked standing because he was not a presumed father. The appellate court affirmed.

Thus, even if petitioner did live with real party before Z.W.'s birth, if she can show that he never had a relationship with the child afterwards (evidence that he was barred from the hospital would tend to support this), he cannot establish he is a presumed father.

In *Miller v. Miller* (1998) 64 Cal.App.4th 111, the court found that the conclusive presumption of paternity applied to the mother's husband as a matter of law under section 7541 and it was irrelevant whether or not the putative father was the child's biological father. It should be noted that the putative father contended he had rebutted this presumption through the blood test results he submitted as part of his complaint. The appellate court found, however, these "blood test results cannot override the conclusive presumption of section 7540 because the tests were not authorized by section 7541. The tests were neither ordered by the court nor performed by court appointed experts. (§[§] 7551 & 7552.) As a result, these tests have no legal significance." (*Miller*, at p. 119.)

Finally, a decision from our court further supports the proposition that ordering genetic testing is error when the putative father has no standing as a presumed father. (*H.S. v. Superior Court* (2010) 183 Cal.App.4th 1502 [Fourth Dist., Div. Two].)

In this case, genetic testing should not go forward as it would serve no purpose to establish real party's rights unless he can first show he qualifies as a presumed father.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to vacate its order for genetic testing and to conduct further proceedings in accordance with the views expressed herein.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner is to recover costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

CODRINGTON
J.

7