Filed 12/29/15  Reece v. TomatoBank CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KATHRYN REECE, | B256989 |
| Cross-Complainant and Appellant, | (Los Angeles County Super. Ct. No. BC452315) |
| v. | |
| TOMATOBANK, N.A., | |
| Cross-Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Affirmed.

Holmes, Taylor & Jones and Andrew B. Holmes for Cross-complainant and Appellant.

Neufeld Marks, Timothy L. Neufeld, Yuriko M. Shikai for Cross-defendant and Respondent.

_____

Kathryn Reece appeals from the summary judgment in favor of cross-defendant TomatoBank on her cross-complaint alleging several causes of action arising from TomatoBank's foreclosure of Reece's hotel, which served as collateral for a business loan. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2001 Kathryn Reece bought the Aztec Hotel in Monrovia, a 1920s-era property whose Mayan-inspired architecture had earned it designation in the National Register of Historic Places. The hotel included a bar and grill. In 2007 TomatoBank loaned Reece $2.1 million to help renovate the hotel. The commercial loan was secured by a trust deed on the hotel. The loan permitted the bank to appoint a receiver for the property in the event of any default. The grounds for declaring a default included: (1) nonpayment; (2) the failure to pay required taxes; and (3) a material adverse change in Reece's financial condition.

Documents submitted by Reece show that by 2008 she began having difficulty making her monthly loan payments. Reece disputed some of the amounts owed, claiming that the bank had misapplied or overlooked some portion of her payments. In January 2009, the bank and Reece worked out a "temporary payment agreement" that permitted Reece to make interest only payments from September 2008 through January 2009. The monthly due date was changed to accommodate Reece, and the monthly payment was changed to $15,900.[1] The bank then reduced this agreement to writing in a document styled as the "change in terms agreement." The change in terms agreement stated that it was intended to resolve all disputes between the parties, in part by reallocating past late fees and other charges to the principal balance of Reece's loan. Reece did not sign and return that document until November 2010, however, and did so with certain handwritten

---

[1]    We have rounded all dollar amounts except where the precise amount is necessary to our analysis.

2

modifications that Reece contends, and the bank disputes, the bank agreed to. In the interim, however, it appears the parties acted as if that agreement were in effect.

Documents submitted by Reece show that throughout 2009 and 2010 she still continued having problems making her loan payments. In addition to making late or partial payments, some of her payment checks bounced. Reece then obtained a $35,000 loan from the Federal Small Business Administration, which was applied to her outstanding loan balance. Reece claimed the bank was still miscalculating and misapplying her payments, in violation of certain promises and agreements made by various bank employees. In August 2010 the bank sent Reece a notice of default based on the following: (1) her failure to make all payments when due left her $81,000 in arrears; (2) her failure to pay required taxes associated with her hotel operations; and (3) a material adverse change in her financial condition.

In January 2011 the bank sued Reece for breach of contract and judicial foreclosure, and asked the court to appoint a receiver. Later that month the trial court appointed a receiver. When the receiver inspected the hotel, he found it in extremely poor condition. The hotel had numerous roof leaks, including six major ones that caused a partial ceiling collapse over three guestrooms. One leak had so undermined a support beam that roofers refused to work on it. The property was infested with rats, cockroaches, bees, and other insects. The guestrooms were in poor condition. Furniture was either broken or missing. Heating and air conditioning for the rooms was not working. The bathrooms lacked towels and soap. The linens were in poor condition and the hotel's laundry machine was broken. There was also insufficient hallway lighting. Most of the smoke detectors were inoperable, as were the guestroom phones.[2]

The receiver also learned that Reece was $5,000 behind on her utilities payments, leading to the cut-off of trash pick up services. Property insurance, which was required by the terms of the loan, had lapsed. The receiver also found that Reece was delinquent

---

[2]     By this point, most of the hotel's guests were in fact financially-distressed recipients of county relief programs.

on numerous tax and license fee payments. She had not paid her county property taxes since 2008. Fees and penalties owed to the Los Angeles County Housing Authority were two years past due. She owed the state for unpaid sales tax revenues. Reece had failed to provide workers compensation insurance, and there was an outstanding workers compensation claim. Finally, there was less than $1,000 in the hotel's bank accounts, forcing the receiver to borrow more money from the bank to cover these obligations.[3]

The trial court authorized the receiver to sell the property, and a foreclosure sale was scheduled for May 16, 2011. On May 12, however, Reece filed for bankruptcy. Six days later, the bankruptcy court granted the bank's motion to leave the receiver in place. Reece's creditors filed proofs of claim in excess of $4 million. These included: a claim by Wells Fargo Bank that Reece was in default of $1.5 million on her personal home loan; an IRS claim against Reece for unpaid income taxes of $134,000 dating back to 2006; a claim for unpaid property taxes of $187,000 by Los Angeles County dating back to 2007; a claim for $16,000 from the State Board of Equalization dating back to April 2009; and a claim by the State Employment Development Department for unpaid payroll taxes of $16,000 dating back to 2006.

In July 2011 the bank moved for relief from the automatic bankruptcy stay so it could foreclose on the hotel. The bank argued that Reece had defaulted on her loan payments, that the hotel was in such bad shape that it now appraised for only $2.05 million, and that Reece would not be able to reorganize her debts and resume operating the hotel because her personal debts were nearly twice the amount of the property's value. Reece opposed the motion, contending: (1) she was not behind on her payments because the bank continued to renege on agreements concerning the timing, amount, and application of her loan payments; (2) the property's condition was not nearly as dire as the bank contended, and she had been diligently trying to restore the property; and

---

**3** The record includes copies of photographs documenting the hotel's condition. Although some are clear enough to see the conditions the receiver complained of, many are fuzzy and indistinct.

4

(3) based on an appraisal she commissioned, the hotel was worth more than $4 million. As a result, she was able to reorganize her finances and continue to properly operate the hotel.

Over the course of several hearings the trial court accepted the valuation information provided by the bank's appraiser and determined that the hotel was worth $2.05 million and that Reece had no equity in the property. The bankruptcy court found that the hotel's financial problems were not recent. The court also found that Reece had only been able to maintain a positive cash flow by not paying certain expenses. As a result, she had not paid the bank, vendors, utilities, payroll taxes, property taxes, sales taxes, or workers compensation insurance. In addition, the property required several hundred thousand dollars worth of repairs. Based on this the bankruptcy court concluded that Reece stood no chance of reorganizing her affairs in a way that made possible proper operation of the hotel, and in November 2011 granted the bank's motion for relief from the bankruptcy stay. The bankruptcy court dismissed Reece's bankruptcy action a few weeks later.

The receiver's final report, which was filed with the superior court in September 2012, noted that the bank had completed a foreclosure sale of the hotel in approximately April 2012. Although the report (and the record) does not disclose the sale price, the hotel ended up with a cash shortfall of nearly $3,400. The report included the receiver's final accounting, which listed nearly $340,000 advanced by the bank to pay outstanding debts and complete basic maintenance necessary to keep the hotel operational and in compliance with applicable building, fire safety, and health department regulations. The trial court approved that report and deemed it settled.

In the interim, Reece filed a cross-complaint against the bank for negligence, negligent misrepresentation, fraud, breach of contract, negligent and intentional interference with prospective economic advantage, tortious interference with contract,

5

and unfair business practices (Bus. & Prof. Code, § 17200).[4] Each cause of action was based on allegations that the bank wrongfully foreclosed on the hotel as the culmination of practices that included failing to properly account for and apply her loan payments and then reneging on promises to correct these errors. The interference with contract and economic advantage claims alleged that the bank's conduct and eventual wrongful foreclosure interfered with Reece's business relations with her employees, customers, and vendors.

The bank moved for summary judgment, primarily on the ground that Reece was collaterally estopped by the receivership and bankruptcy proceedings to deny that she had defaulted on her loan. The bank also contended that: (1) the negligence claim failed because the arms-length lender-borrower relationship meant the bank had no duty of care to Reece; (2) any negligence by the bank did not cause Reece to lose the hotel; (3) any alleged misrepresentations by the bank did not harm Reece because her own conduct led to the foreclosure; (4) the bank did not breach the loan agreement and, even if it did, the breach did not damage Reece; (5) the contract interference claims failed because Reece's failures to pay her vendors, along with her other economic difficulties, left her with no valid economic relationships; and (6) the unfair business practices claim also failed because Reece's loss was self-inflicted. The trial court agreed and granted the bank's summary judgment motion.[5]

---

[4] The operative pleading is Reece's first amended cross-complaint, which originally included causes of action for trade libel and unjust enrichment. Those claims were dismissed by the trial court after sustaining without leave to amend the bank's demurrer.

[5] Each party raised numerous objections to the other's declarations and supporting evidence. The trial court granted the bank's objections to numerous portions of Reece's declaration, although the portions of the declaration authenticating numerous correspondence with the bank, along with other documents, remained. The trial court overruled all of Reece's evidentiary objections. On appeal, Reece asks us to review these rulings, but does so by way of a blanket request that does not address individual objections with discussion, analysis, and citation to authority. We therefore deem the issue waived. (*Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1384-1385.)

6

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (§ 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and re-determine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 719-720.)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (§ 437c, subds. (o)(2), (p)(2).) The pleadings determine the issues to be addressed by a summary judgment motion and the declarations filed in support of such a motion must be directed to the issues raised by the pleadings. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denials of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (§ 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

**DISCUSSION**

1.     *Most of Reece's Claims Are Barred By Collateral Estoppel*

The doctrine of collateral estoppel, sometimes known as issue preclusion, prevents a party to prior litigation from relitigating issues decided against him in the earlier proceeding.  (*Roos v. Red* (2005) 130 Cal.App.4th 870, 879.)  The doctrine applies when the party to be estopped was a party to the earlier action, there was a final judgment on the merits in that action, and the issue necessarily decided in the first action is identical to the one being relitigated.  (*Ibid.*)

Reece contends the doctrine is inapplicable to the initial receivership orders because those orders were not final judgments but were instead designed to maintain the status quo pending the outcome of the litigation and, in any event, did not reach the merits of her cross-complaint.  She contends that the bankruptcy court orders also have no collateral estoppel effect for the same reasons.

Our courts have applied collateral estoppel to bankruptcy judgments and orders, including orders granting a creditor relief from the automatic stay.  (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1106-1107.)  When the bankruptcy court presiding over Reece's case granted the bank's motion for relief from the stay, it made several factual findings:  that the hotel was in need of repairs totaling several hundred thousand dollars; that the hotel was worth only $2.05 million; that Reece had not paid the bank, her vendors, her utility bills, or her payroll, property, and sales taxes.  As a result the property had no equity.  Based on Reece's poor financial condition, she stood no chance of reorganizing her affairs so as to allow her to continue operating the hotel. These factual findings were litigated.  The parties' respective appraisal experts testified at length, and various private and public entities submitted claims against Reece totaling more than $4 million.

These findings necessarily support the conclusion that Reece's financial condition had materially changed for the worse, which was one of the three grounds listed by the

8

bank in its notice of default.[6]  Furthermore, while Reece focuses on the initial

receivership proceedings, she overlooks the trial court's order confirming the receiver's

final report and settling the hotel's accounts.  Reece has never challenged that order,

either below or on appeal, and it therefore has res judicata effect.  (*Aviation Brake

Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230, 233.)  In short, all the factual

underpinnings to the bank's claim that Reece was in default because of her financial

condition have been adjudicated.  Apart from the collateral estoppel issue, Reece's

appellate brief does not address this ground for default.[7]  We next consider whether any

other portions of Reece's claims remain viable.

2.      *Reece Fails to Raise A Triable Issue of Fact Concerning Her Loan Payment
        History*

Reece admits that the true focus of her cross complaint is the bank's alleged

mismanagement of her loan payments.  The bank cites *Nymark v. Heart Fed. Savings &

Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095-1096, for the proposition that it owed no

duty of care to Reece because its involvement in her loan transaction did not exceed the

scope of its conventional role as a mere money lender.  Although *Nymark* states the

---

[6]      At oral argument, Reece's counsel argued that the bankruptcy court's finding
could not have collateral estoppel effect as to her financial condition at the time the bank
declared her in default because the bankruptcy proceeding focused on her financial
condition nine months earlier.  Because Reece's debts dated back as far as 2006, we
reject that contention.  Her counsel also contended that she had made payment
arrangements with her debtors, but the portions of Reece's declaration addressing those
arrangements were stricken by the trial court.  In any event, Reece's statement that she
had late payment arrangements with some of her debtors is too vague an assertion to raise
a triable issue of fact that her debt situation had been meaningfully ameliorated.

[7]      The closest Reece comes to addressing this issue is her contention that non-
monetary defaults either did not occur or were fully disclosed to, and waived by, the
bank.  This assertion is not supported by discussion, analysis, and citation to authority,
and is therefore waived.  (*Said v. Jegan, supra,* 146 Cal.App.4th at pp. 1384-1385.)  In
any event, as just discussed, Reece is collaterally estopped to deny that she defaulted on
her loan due to a material adverse change in her financial condition.

general rule, other decisions have found a duty of care where the lender commits fraud or negligence in mishandling loan servicing or by misleading a borrower about loan modifications while actually pursuing foreclosure. (*Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 945-949; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 898-906.) Therefore, if triable issues of fact exist to support Reece's negligence claim, summary judgment would not be warranted.

Reece contends that the bank did not carry its burden of showing that it acted properly, and, if it did, that she raised triable issues of fact that the bank mismanaged the way it serviced her loan. We disagree.

The bank's summary judgment moving papers included the notice of default claiming that Reece was in arrears by $81,000 as of August 31, 2010. It also included the declaration of lawyer Eva Wong and the accompanying payment history schedule showing that as of December 17, 2010, Reece was in arrears by $130,000. The bank's motion also included its proof of claim in the bankruptcy action of $2.5 million, which consisted of $2.27 million in unpaid principal, interest, and late charges. This evidence was sufficient to satisfy the bank's burden as the summary judgment moving party that Reece had defaulted on her loan payments.

Instead of an accounting showing precisely how the bank misapplied her payments and that she was not in arrears when the default was declared, Reece relies solely on her own assertions that the bank misapplied her payments and reneged on promises regarding that issue. Absent evidence showing the specific manner in which the bank supposedly mismanaged Reece's payments she is unable to raise a triable issue of fact that any such mismanagement occurred. Because her entire complaint is predicated on the claim that the bank mismanaged her loan payments, summary judgment was proper.

## DISPOSITION

The summary judgment for respondent TomatoBank is affirmed. Respondent shall recover its appellate costs.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.