[No. E049923. Fourth Dist., Div. Two. Apr. 22, 2010.]

H.S. et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
S.G., Real Party in Interest.

**1504**

COUNSEL

Leslie Ellen Shear and Y. Jessie Shaw for Petitioners.

No appearance for Respondent.

No appearance for Real Party in Interest.

OPINION

**McKINSTER, J.**—In granting this petition, we hold that the trial court erred when it ordered genetic testing in a paternity action when real party in interest had no standing as a presumed father other than a voluntary declaration of paternity that was executed and subsequently rescinded by a married woman. When the trial court granted the motion to set aside the declaration, it should have found that the declaration was void and had no effect. Accordingly, we grant the petition for writ of mandate brought by the married couple to vacate the order for genetic testing.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This is a paternity action involving a married couple, who will be referred to as petitioners or husband and wife,[2] and wife's former lover, S.G.

Husband and wife are from China where they first married. They divorced in Riverside in September 2001, but reconciled and remarried in 2002.

Wife became pregnant in 2005 and gave birth to a daughter, A. At the time wife became pregnant, she and husband were living apart during the work-week but claim that they spent the weekends together. Wife had an affair

---

[1] The court has read and considered the record in this proceeding and the petition. We have invited real party in interest to file a response, but he has failed to do so. We have concluded that an alternative writ would add nothing to the presentation already made and would cause undue delay in resolving this matter. We therefore issue a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178–179 [203 Cal.Rptr. 626, 681 P.2d 893]; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222–1223 [23 Cal.Rptr.2d 397, 859 P.2d 96], disapproved on another ground in *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 724, fn. 4 [3 Cal.Rptr.3d 623, 74 P.3d 726].)

[2] We adopt these designations to avoid creating an "alphabet soup" resulting in further confusion if we had used their initials.

with S.G. When wife became pregnant, she concealed this fact from husband. She says that on one occasion husband commented that she felt chubby and asked her whether she was pregnant. Wife denied she was, and claims she did so because she felt guilty about the affair. Wife separated from husband prior to the child's birth.

Wife also admits that she told S.G. about her pregnancy, and that he responded by pressuring her to have an abortion. She claims their affair ended after this disclosure. When she did give birth, she called S.G., who came with his mother to the hospital.

Wife and S.G. executed a voluntary declaration of paternity or POP (Paternity Opportunity Program) declaration about 90 minutes after the birth. She does not have a good command of English and uses an electronic translator, but she did not have this device with her in the hospital and did not understand the explanation about the form given by the hospital personnel. In fact, the hospital gave her an obsolete form because in April 2006 the Department of Child Support Services issued a revised form that expressly and repeatedly states that the procedure is only available to unmarried mothers.

Within 60 days, wife executed a rescission of the declaration after using her translator to figure out what it meant. S.G. admits receiving this rescission, although the proof of service is defective.

Two weeks after A. was born, husband learned of her birth. He went to see her and husband and wife reconciled. Husband has accepted A. as his daughter. Husband and wife have lived together since then, along with the child, and a father-daughter relationship has developed between husband and A. Initially, the couple allowed S.G. to visit A. twice a month for two hours in their home. Husband became dissatisfied with this situation; they consulted a lawyer who advised them that they did not have to allow this. Husband and wife refused S.G. further visits in June 2008.

In May 2008, S.G. filed a petition to establish paternity and requested genetic testing. If it is determined he is the biological father, then he seeks visitation as well as support.

Wife responded to S.G.'s action with a motion to quash the proceedings and a motion to set aside the POP. The trial court denied the former, but granted the latter under Family Code[3] section 7575, subdivision (c)(1). In

---

[3] Statutory references are to the Family Code unless otherwise indicated.

September 2008, the trial court ordered genetic testing under section 7575, subdivision (c)(5).

The testing did not take place because wife asked for reconsideration. Meanwhile, husband moved to join in the proceedings.

At the November 2009 hearing, the trial court reaffirmed its previous order setting aside the POP. The trial court noted that the statute does not specifically prohibit a POP from being executed by a married mother and another person. It concluded, therefore, that such a POP declaration was not void on its face. It then considered whether allowing a voluntary POP would somehow "frustrate the purpose of the legislative intent and frustrate the purpose or policy of the statute." It concluded that the intent would not be frustrated because even if it held that the POP was void or voidable when executed by a married woman, the child would be provided for financially.

The trial court found that wife and husband had not been cohabiting at the time of conception and, thus, the conclusive presumption of paternity under section 7540 did not apply.[4] It did find husband was a presumed father under section 7611, subdivisions (a) and (d).

The trial court reaffirmed its order for genetic testing under section 7575, subdivision (c)(5). It issued a temporary stay of its order, and husband and wife petitioned this court for a writ of supersedeas, mandate, or prohibition. We issued a temporary stay and invited S.G. to respond, which he has not done.

## DISCUSSION

█ The POP procedure establishes a simple procedure so that children can be assured of having child support and other benefits. The statute is primarily for the protection of children of unwed mothers to make sure that they have financial support. The Department of Child Support Services maintains that the POP should not be given to married mothers, and section 7571 provides only that the POP forms shall be offered to unmarried mothers in the event of a live birth. The trial court indicated that the department's literature was not binding on it and noted that the statute does not specifically prohibit a POP from being executed by a married mother and another person. It concluded, therefore, that such a POP was not void on its face. It then

---

[4] Petitioners do not ask this court to reverse the factual finding that section 7540 does not apply.

considered whether allowing a voluntary POP would somehow "frustrate the purpose of the legislative intent and frustrate the purpose or policy of the statute." The trial court found it did not because the child would be provided for financially either by husband or the POP father.

■ However, the trial court focused only on the policies behind the POP statutes and ignored the policies underlying the marital presumption and standing statutes to maintain the stability of the family. As explained in *Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 51 [22 Cal.Rptr.3d 606], "the impact of a relationship between an unwed father and his child on the state's interest in preserving marriage will vary from case to case. In some instances the nonmarital paternal relationship will be a substantial burden on a marriage while in other cases it will have little if any impact." The marital presumptions under sections 7540 and 7611, subdivision (a), do allow the mother and her husband to prevent the biological father from ever establishing parental rights over a child. However, the state's interest in preserving marriage will not necessarily outweigh the interests of a man and a child with whom the man has established a paternal relationship. (*Craig L. v. Sandy S.*, at p. 51; *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932 [72 Cal.Rptr.2d 871, 952 P.2d 1139].) Using this same reasoning, we find that recognizing a POP declaration executed by a married woman does undermine these latter purposes, at least under certain circumstances. This appears to be just such a case, where the wife tried to rescind the POP and she and her husband have raised the child as his child in a stable family relationship.

■ Moreover, the trial court set aside the POP, but ordered genetic testing pursuant to section 7575.[5] S.G. has no standing as a presumed father other

---

[5] "(c)(1) Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the voluntary declaration of paternity on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure. If the action or motion to set aside a judgment is required to be filed within a specified time period under Section 473 of the Code of Civil Procedure, the period within which the action or motion to set aside the voluntary declaration of paternity must be filed shall commence on the date that the court makes an initial order for custody, visitation, or child support based upon a voluntary declaration of paternity. [¶] . . . [¶] (5) If the voluntary declaration of paternity is set aside pursuant to paragraph (1), the court shall order that the mother, child, and alleged father submit to genetic tests pursuant to Chapter 2 (commencing with Section 7550). If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the genetic tests, are that the person who executed the voluntary declaration of paternity is not the father of the child, the question of paternity shall be resolved accordingly. *If the person who executed the declaration as the father of the child is not excluded as a possible father, the question of paternity shall be resolved as otherwise provided by law.* If the person who executed the declaration of paternity is ultimately determined to be the father of the child, any child support that accrued under an order based upon the voluntary declaration of paternity shall remain due and owing." (§ 7575, italics added.)

than the POP declaration and would have no standing to challenge husband's presumption of paternity under section 7630. Even subdivision (c)(5) of section 7575 provides that if the POP father is not excluded as the biological father by testing, "the question of paternity shall be resolved as otherwise provided by law." S.G. cannot be declared the father when he is not otherwise a presumed father under section 7630. In *Dawn D. v. Superior Court, supra,* 17 Cal.4th 932, 935, the alleged biological father did not meet any of the statutory criteria for presumed fatherhood and, thus, had no standing to challenge the husband's paternity. The Supreme Court held that he had no constitutional liberty interest in establishing a parental relationship with the child.

Even in a contest between presumed fathers, the biological father does not automatically prevail against the mother's husband under section 7611, subdivisions (a) and (d). Rather, the court must weigh all relevant factors, including biology, in determining which presumption is founded on weightier considerations of policy and logic. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 604 [10 Cal.Rptr.3d 205, 85 P.3d 2].)

The trial court recognized that S.G. faced hurdles even if he were found to be the biological father. In this regard, it noted the strong policy to give preference to the married couple who are holding out a child as their own.

■ In conclusion, we hold that requiring the parties to undergo genetic testing would be burdensome and serve no useful purpose when there is no basis to recognize S.G. as a presumed father other than the POP declaration. As previously discussed, that declaration is voidable when executed by a married woman. Under the circumstances of this case, the trial court should have found it was void and of no effect under these circumstances when it granted wife's motion to set it aside.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of Riverside County to vacate its order for genetic testing and to issue a new and different order in accordance with the views expressed herein.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

The previously issued stay is hereby dissolved.

Petitioners are to recover their costs.

Ramirez, P. J., and King, J., concurred.