Filed 11/13/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----


| | |
|---|---|
| C.A., | C084473 |
| Plaintiff and Respondent, | (Super. Ct. No. SDR0049126) |
| v. | |
| C.P. et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Placer County, Suzanne Gazzaniga, Judge.  Affirmed.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Defendants and Appellants.

Forester Purcell Stowell and Matthew K. Purcell for Plaintiff and Respondent.


This case involves a little girl bonded to and loved by each of her three parents.

The wife in a married couple (defendants C.P. and J.P., wife and husband) conceived the child with a coworker (plaintiff C.A.), but hid that fact from wife's

employer and--initially--from husband.  The marriage remains intact and wife and husband parent the child.  For the first three years of the child's life, the couple allowed plaintiff to act in an alternate parenting role, and the child bonded with him and his close relatives.  Defendants excluded plaintiff from the child's life when he filed the instant petition seeking legal confirmation of his paternal rights.  The trial court found that wife misled the court at an interim custody hearing, prolonging what the court later viewed as an unwarranted separation.  Despite this period of separation, the court found the child was still bonded to all three parents and found this to be a "rare" case where, pursuant to statutory authority, each of three parents should be legally recognized as such, to prevent detriment to their child.  Defendants appeal.  We shall affirm.

## BACKGROUND

The child was born in July 2012 to wife, who was then and remains married to husband.  In November 2015, plaintiff filed the instant petition to confirm his relationship with the child, change her name, and obtain paternity testing.  After an interim order for paternity testing, a court trial was held, after which the trial court granted plaintiff some of the relief he sought.

Defendants do not explicitly attack the sufficiency of the evidence, the key facts were not disputed, and the trial court did not find defendants credible on some key points.  In particular, the trial court faulted wife for her "misleading portrayal" that minimized plaintiff's involvement in the child's life at an earlier hearing.[1]  The minimization led the court to deny plaintiff's request for temporary visitation orders, a request that it otherwise would have found appropriate.  But the court found plaintiff's involuntary separation from the child due to "lack of candor" by wife did not break the strong bond defendants had allowed plaintiff to develop with the child.

---

[1] The settled statement does not describe wife's misrepresentations, and the trial court's written ruling does not provide further details of how she misled the court.

Defendants never questioned plaintiff's status as the child's biological father, a fact each defendant had known before the child was born. Wife led plaintiff to believe she was separated but continued to cohabit with husband without plaintiff's knowledge. Plaintiff and wife were coworkers, and wife wanted to ensure other coworkers did not find out about the affair, which caused plaintiff to refrain from seeking paternity leave from their employer. Plaintiff was involved with the child's early medical evaluations and treatment, openly held her out as his daughter, received her into his home, paid child support, and had regular visitation until defendants cut him off after he filed the instant petition. Plaintiff's close relatives (sister, nieces, and mother) also developed relationships with the child. Plaintiff had thought the child bore his last name until he saw a prescription bottle showing otherwise, when the child was about eight or nine months old.

Plaintiff had regular overnight parenting that increased over time to every other weekend, and saw the child "from time to time" during the week, from when the child was about seven months old until late in 2015, when this petition was filed.

When the child was about 18 months old, all parties participated in autism screening and therapy for her. Neither defendant refused plaintiff's informal child support payments, set in an amount determined by wife. Plaintiff only stopped paying when defendants refused to let him continue to see the child. Plaintiff respected the marriage and wanted to co-exist with husband; in turn, husband was committed to maintaining his marriage and conceded that if the roles were reversed he would want to be recognized as a third parent.

The trial court found "no doubt" the child was "well bonded to [plaintiff] and his extended family" and that "he has established a strong, long and enduring bond with" her that defendants had allowed to form. Plaintiff and husband were each found to be a presumed father of the child. Weighing the two presumptions, the court found it appropriate to recognize all three adults as parents, otherwise the child would suffer

3

detriment. The judgment declares that the child has three parents who shall share custody, with mediation to resolve any conflicts, and also adds plaintiff's last name to the child's existing set of names, though not as her last name.

Defendants timely appealed. We denied their interim petition for writ of supersedeas, but granted their request for calendar preference.

## DISCUSSION

Defendants head four different claims in their opening brief. The root of all their claims is that the trial court erred in finding that plaintiff was a third parent.

We first explain that we presume the trial court's findings are supported by the evidence. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Although defendants purport to raise purely legal issues, "legal issues arise out of facts, and a party cannot ignore the facts in order to raise an academic legal argument." (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.) "[I]n addressing [their] issues we will not be drawn onto inaccurate factual ground." (*Ibid*.)

### I

### *Three-Parent Finding*

Defendants primarily contend the trial court should not have found plaintiff was a third parent under the relevant statutes, and make the subsidiary claims that such a finding interferes with the state's interest in preserving the institution of marriage and impinges on their parental rights. As we explain, we disagree.

A. *Preface*

We begin with the observation that defendants repeatedly rest their arguments on an inaccurate premise, that because by statute husband is conclusively presumed to be the child's father, the child cannot have more than one father. In other words, they interpret the "conclusive" presumption to be an "exclusive" presumption, the application of which precludes the operation of any other presumptions of parenting. This view does not comport with the statutory scheme or extant precedent.

4

Centuries ago, noted legal reformer William Murray, Earl of Mansfield, referenced a rule that spouses could not give evidence that a child born *during* the marriage was not born *of* the marriage.  (*Goodright v. Moss* (K.B. 1777) 2 Cowp. [vol. 2] 591, 592 [98 Eng.Rep. 1257] ["the law of England is clear, that the declarations of a father or mother, cannot be admitted to bastardize the issue born after marriage"]; see Black's Law Dict. (10th ed. 2014) Lord Mansfield's rule, p. 1086.)  This generally meant the child was conclusively presumed to be the husband's child; the rule and its accreted corollaries and exceptions ensured a child would be deemed "legitimate" for various largely antiquated reasons.  (See *Estate of Mills* (1902) 137 Cal. 298, 301-304; *Michael H. v. Gerald D*. (1989) 491 U.S. 110, 124 [105 L.Ed.2d 91, 107] ["The presumption of legitimacy was a fundamental principle of the common law"]; *Jaen v. Sessions* (2d Cir. 2018) 899 F.3d 182, 188; 10 Witkin, Summary of Cal. Law (11th ed. 2017) Parent and Child, Evidence of Marriage, §§ 5, 15-20, pp. 35-36, 46-53; 1 Bishop, New Commentaries on Marriage, Divorce, and Separation (2d ed. 1891) The Marriage Disclosed in the Proofs of Pedigree and Legitimacy, §§ 1167-1182, pp. 503-509 [describing development of the rule and some exceptions]; Annot., Who May Dispute Presumption of Legitimacy of Child Conceived or Born During Wedlock (1979) 90 A.L.R.3d 1032, § 2(a); Elrod, Child Custody Prac. & Proc. (Mar. 2018 update) Historical Perspective, § 1:3 [the presumption "was one of the strongest presumptions known to the law" and was strengthened via Lord Mansfield's rule].)  The presumption sets out a substantive legal rule in California.  (See *Kusior v. Silver* (1960) 54 Cal.2d 603, 619; *Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1203-1204 (*Brian C.*).)

"The Legislature . . . used this conclusive presumption fiction for three public policy reasons, namely, (1) preservation of the integrity of the family; (2) protection of the innocent child from the social stigma of illegitimacy; and (3) a desire to have an individual rather than the state assume the financial burden of supporting the child."

(*In re Marriage of B.* (1981) 124 Cal.App.3d 524, 529-530.) Thus, although originating in ancient social contexts, valid reasons for the rule remain.

The presumption continues in California today: "Except as provided in Section 7541, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." (Fam. Code, § 7540.)[2] In turn, section 7541 allows blood tests to be used to rebut the presumption, provided the husband or presumed father moves for testing within two years of the child's birth. (§ 7541, subd. (b).)

"The law concerning children born to married women when there is a dispute over paternity is a latter-day admixture of ancient common law presumptions and ideas, statutes, statutory interpretation and legislative acquiescence, common law accretion and constitutional imperatives, all in the face of the technological ability, developed only recently, to positively identify who a biological father really is." (*Brian C., supra*, 77 Cal.App.4th at pp. 1202-1203.) Since then, the Legislature has responded to new scientific advances and new ways people now choose to form relationships. But the legal changes express a consistent desire to preserve stability for the innocent children who have no control over what their various parents have chosen to do with *their* lives. (See, e.g., *id*. at pp. 1209, 1219; *Rodney F. v. Karen M*. (1998) 61 Cal.App.4th 233, 239-240 (*Rodney F*.) [purported biological father with *no* relationship with a child born of a married couple could not overcome presumption husband was the father and upset constitutionally protected family]; *In re Marriage v. Freeman* (1996) 45 Cal.App.4th 1437, 1444-1447.)

But husband here is not trying to avoid being labeled as a father in this case. He is not trying to evade the force of the conclusive presumption, such as to avoid child

---

[2] Further undesignated statutory references are to the Family Code.

6

support liability (cf., e.g., *In re Marriage of B*., *supra,* 124 Cal.App.3d 524), and the judgment recognizes that he is a father to the child. Instead, defendants are trying to prevent plaintiff--the biological father--from *also* being treated as a father to the child. That is a critical difference under the statutory scheme, as we next explain.

B. *Application of the Statute*

As stated, there is no dispute that husband is presumed to be at least *a* father of the child under section 7540. Plaintiff is also presumed to be a father, under section 7611, subdivision (d), which provides that a person "is presumed to be the natural parent" if the "presumed parent receives the child into his or her home and openly holds out the child as his or her natural child." Defendants do not challenge the sufficiency of the evidence showing that plaintiff has satisfied this statute. Therefore, they cannot deny that plaintiff is a presumed father under this statute. The question is whether he can be deemed a third parent, as the trial court deemed him.

The pertinent bill (Sen. Bill No. 274 (2013-2014 Reg. Sess.)) included a statement of legislative intent as follows:

> "(a) Most children have two parents, but in rare cases, children have more than two people who are that child's parent in every way. Separating a child from a parent has a devastating psychological and emotional impact on the child, and courts must have the power to protect children from this harm.

> "(b) The purpose of this bill is to abrogate *In re M.C.* (2011) 195 Cal.App.4th 197 insofar as it held that where there are more than two people who have a claim to parentage under the Uniform Parentage Act, courts are prohibited from recognizing more than two of these people as the parents of a child, regardless of the circumstances.

> "(c) This bill does not change any of the requirements for establishing a claim to parentage under the Uniform Parentage Act. It only clarifies that where more than two people have claims to parentage, the court may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents.

"(d) It is the intent of the Legislature that this bill will only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents." (Stats. 2013, ch. 564, § 1.)

To advance the public policy reflected by these explicit legislative findings, section 7612, subdivision (c) now provides as follows:

"In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."

Defendants contend plaintiff lacked standing to bring this case because he could not rebut the conclusive presumption that husband was the child's father. We disagree. The "division" referred to by the quoted subdivision ("a claim to parentage under this division") is division 12 of the Family Code, which governs parent and child relationships. It begins with section 7500 and ends with section 7962. Therefore, *both* defendant husband (by virtue of section 7540) and plaintiff (by virtue of section 7611, subd. (d)) have "a claim to parentage under this division" as provided by section 7612, subdivision (c). Under section 7630, subdivision (b), "[a]ny interested party may bring an action *at any time*" (italics added) to determine the existence, if any, of a parental relationship under section 7611, subdivision (d). Thus, plaintiff had statutory authority to bring this action. (See *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, 384; *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1133 ["There are no time limits or standing requirements for challenging, or asserting, a section 7611, subdivision (d) presumption"].)

The fact that defendant husband's claim to parentage arises from a conclusive statutory presumption (§ 7540) and plaintiff's claim arises from a rebuttable statutory

8

presumption (§ 7611, subd. (d)), does not change the fact that each man has a claim that arises "under" division 12 of the Family Code. (See *Brian C.*, *supra*, 77 Cal.App.4th at pp. 1219-1221 [in part (at p. 1220) rejecting the "ludicrous result that a man could fit within a statutory category of presumed fatherhood and still not have standing to establish paternity"]; *Miller v. Miller* (1998) 64 Cal.App.4th 111, 116-117 [§ 7630, subd. (b) gave standing to seek paternity to a man who claimed parentage based on § 7611, subd. (d), notwithstanding the existence of a conclusively presumed father under § 7540]; see also *Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 43 [couple could have excluded purported biological father, but because they "allegedly permitted the biological father to receive the child into his home and hold him out as his child, the biological father may assert the rebuttable presumption provided by section 7611, subdivision (d)"] (*Craig L.*).)

Defendants point to statements in part of the legislative history to argue the three-parent statute was not meant to be applied where a stable marriage exists. But the relevant report explains that "cases involving more than two parents are, almost by definition, complicated and will require courts to balance many competing interests" and the bill allows a three-parent result "in very narrow situation when necessary to prevent detriment to the child." (Assem. Com. on Jud., Rep. on Sen. Bill No. 274 (2013-2014 Reg. Sess.) as amended May 14, 2013, p. 6.) The report notes, consistent with the statute, that the bill requires a showing of detriment to the child and that the court must act in "the child's best interest, including the need for stability" before making a three-parent order. (*Id.* at p. 7.) If the Legislature wanted to limit the bill's application to cases where no stable marriage existed, it easily could have said so. Instead, it directed courts to consider "all relevant factors." (§ 7612, subd. (c).) We may not insert into a statute words that are not there. (See *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 184-185.) "If the Legislature has provided an express definition, we must take it as we find it. [Citation.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 819, 826.)

9

Defendants point to *Rodney F.*, *supra*, 61 Cal.App.4th 233 in support of their claim plaintiff lacked any standing once (in their view) the conclusive presumption that husband was the child's father became unrebuttable after two years. But *Rodney F.* is factually distinguishable. That case involved a purported biological father of the child born of a marriage who had *no* contact with the child. He did not claim to have held the child out as his own (cf. § 7611, subd. (d)). (*Rodney F.,* at p. 236.) In those circumstances, the appellate court held the conclusive presumption could not be rebutted, as the claimant was not a presumed father under section 7611. (*Rodney F.,* at pp. 238-239.) Here, as just explained, plaintiff *is* a presumed father because he claimed (and thereafter proved) that he received the child into his home and held her out as his own, thereby conferring standing to press his "claim to parentage" under section 7612, subdivision (c).

*In re Donovan L.* (2016) 244 Cal.App.4th 1075 is instructive. There, the appellate court acknowledged the conclusive presumption in favor of the husband, but then proceeded to examine the then-new three-parent statute, something it would have no reason to do if--as defendants in this case assert--such inquiry was rendered unnecessary by the conclusive presumption. (*Id.* at pp 1086-1094; see also *In re M.Z.* (2016) 5 Cal.App.5th 53, 64-66.) Ultimately, *Donovan L.* concluded it was not appropriate to find the child had three parents because the biological father in that case lacked a parent-child relationship with the child. (*Donovan L.,* at pp. 1092-1094.) For that reason, the appellate court found the husband's conclusive presumption defeated the biological father's claim to parentage. (*Id.* at p. 1094.) Here, a bonded relationship still existed, though it was interrupted by defendants after this petition was filed, and further interfered with by wife's misrepresentations. Contrary to defendants' view, *Donovan L.* implicitly supports plaintiff's claim to parentage in this case. (See also *Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 382-389 [reversing where claimant uncle had relationship with the child but trial court took too narrow a view of detriment and denied his petition; the fact

10

the child had two parents and a stable placement did not mean child would not suffer detriment from severance of relationship with uncle].)

Similarly, in *In re L.L.* (2017) 13 Cal.App.5th 1302, a biological father's exclusion from his child's life during a period *after* he met the presumed parent criteria under section 7612, subdivision (d) did not deprive him of presumed parent status. (*L.L.*, at pp. 1310-1312; see also *In re J.O.* (2009) 178 Cal.App.4th 139, 148-151.) That is, such status (i.e., having the child in his home) did not have to exist at the moment of the court order. However, the *L.L.* court reversed a three-parent finding because no substantial evidence showed the biological father there had an extant relationship with the child, a result consistent with the *Donovan L.* holding. (*L.L.*, at pp. 1315-1317.) In contrast, in this case the trial court found extant bonds between plaintiff and the child were *not* broken.

The mere fact plaintiff and the child had not seen each other for some time before the trial did not mean there was no extant bonded relationship, as defendants assert. Defendants point to a passage of a case stating: "A judgment of presumed parenthood represents a finding that, at the time of entry of the judgment, the person qualified as a presumed parent." (*In re Alexander P.* (2016) 4 Cal.App.5th 475, 491.) We do not read this language to mean that someone who is a presumed father under section 7611, subdivision (d) *necessarily* or *automatically* loses such status merely because of a temporal gap in visitation. Whether the bond remains intact at the time of judgment is a fact-bound decision for the trial court to make. Although defendants warp specific words and phrases from the court's ruling to argue it found no bond existed, the court found plaintiff "has an existing and significant bond" with the child. The passages on which defendants rely addressed how to cure the interim harm to that extant bond caused by the involuntary separation defendants themselves caused.

Section 7612, subdivision (b) provides: "If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section

11

7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Section 7611 in part references the conclusive presumption provided by section 7540, and also includes in subdivision (d) the presumption relied on by plaintiff, based on his holding out the child as his own. Thus, as the trial court recognized, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) Policy in cases such as this has been set by the Legislature.

In lieu of determining which *one* of the two (or more) presumptions should prevail to the exclusion of all competing presumptions, section 7612, subdivision (c), quoted *ante*, now offers an alternative by allowing more than two parents to be recognized. A court may do so "if the court finds that recognizing only two parents would be detrimental to the child." In making such a finding, the court shall "consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 7612, subd. (c).) There is no need to find that any of the persons with a claim to parentage are unfit, and no such finding was made herein.

Although defendants do not head and directly argue a challenge to the sufficiency of the evidence, the tenor of their briefing--including their repeated claims that a "stable" marriage exists and therefore the child does not *need* a third parent--invites us to expound on the trial court's detailed findings.

The trial court discussed all appropriate factors before making the "rare" case finding. The court distinguished this case from others where a married couple *consistently* excluded a biological father, because here defendants allowed plaintiff (and his close relatives) to establish a bond with the child. The court found the child "must be protected from the detriment of being separated from one of her three parents. The court finds it would be detrimental to [her] to recognize only two parents, thus separating her

12

from either [husband or plaintiff]. Moreover, it would be detrimental to [the child] and her progress to not allow [both men] to participate in legal custody decision-making such as health and education. The evidence establishes [she] is a child who would benefit greatly from the continued love, devotion and day to day involvement of three parents."

The trial court gave "significant weight to the strong, long and enduring bond shared by [the child and plaintiff] from the time leading up to her birth and from her birth and following for more than three years. [Plaintiff] was deeply involved in [her] life until he was unilaterally excluded from visits . . . after he filed his petition for custody. It is also established [that husband] has a strong bond with [her] and has been part of her life since she was born. Both [men] provided persuasive and convincing testimony regarding . . . their affection and love for [her. She] is fortunate, to have two devoted Fathers that care deeply for her, love her and are prepared to continue to play an active role in her life." Plaintiff wanted "to respectfully co-exist with" husband, who himself had admitted "that if he stood in [plaintiff's] shoes he would want to be acknowledged as a third parent and have a role as a parent."

The trial court did not find defendants' desire to govern the child's medical care sufficient to tip the scales in their favor, and found "it would be detrimental to [the child] if the court were to only recognize two parents when considering the evidence presented on her autism diagnosis. . . . The court finds each parent has the ability to contribute to and support [the child] through her childhood as she engages in the required therapies associated with her diagnosis to assist her in becoming a happy, healthy and self-supporting adult." The relatively short time during which plaintiff had been excluded was lengthened by wife's actions at an earlier hearing, resulting in an ill-informed ruling. But that gap did *not* break the bond plaintiff had developed with the child for over three years, and could be dealt with by a "measured pace of reconnection facilitated by a professional." Nor would recognizing plaintiff's role remove the child from a stable home; instead, restoring something akin to the prior schedule "allows for continued

13

consistency and stability" and "preserves the bonds created by more than three years of continuing care and contact exercised by both [men.]"

Thus, the record shows that the trial court carefully and conscientiously conducted the weighing process contemplated by the Legislature before finding that this was one of the "rare" cases permitted by statute, where a child truly has three parents, and depriving her of one of them would be detrimental to her.

Defendants have not pointed to any part of the statutory scheme that exempts conclusive fathers under section 7540 from the text of the three-parent statute (§ 7612, subd. (c)) and its immanent purpose to preserve extant parent-child relationships. Nor have they shown that the conclusive presumption under which defendant husband claims fatherhood vitiates the rebuttable presumption under which plaintiff claims fatherhood. (See *Craig L.*, *supra*, 125 Cal.App.4th at pp. 50-51 [decided before three-parent statute; courts resolve competing paternity claims by balancing factors, a per se rule "in favor of preserving any marriage, without regard to the harm the child might suffer, is at direct odds with the entire statutory framework"].)

C. *Constitutional Claims*

In two sparsely analyzed claims, defendants contend that if the statutory scheme authorizes the result herein, it violates constitutional norms in two ways. First, they contend it impinges on the state's right to protect marriage. Second, they contend it impinges on their ability to exercise their parental rights. But defendants do not contend the statutory scheme is facially unconstitutional, and their as-applied challenges falter on the facts as found by the trial court.

1. *Protecting Marriage*

Defendant's claim that the judgment attacks the institution of marriage fails because the state expresses its will primarily through statutes passed by the Legislature and signed by the Governor. (See, e.g., *People* v. *Knowles* (1950) 35 Cal.2d 175, 181-182.) By such means, the state now authorizes three-parent findings in "rare" cases. (See

14

Stats. 2013, ch. 564, § 1(a).)  The trial court, following the text of the relevant statutes, found the child would suffer detriment if she had only two parents.  (See § 7612, subd. (c).)  The state's interests in promoting and defending both the institution of marriage and the stability of a given child's life have been protected by the judgment under attack.

Although state governments have long promoted marriage as a source of stability, what constitutes a marriage--and the scope of legislative authority over marriage--has lately been the subject of significant changes.  (See *In re Marriage Cases* (2008) 43 Cal.4th 757; *Obergefell v. Hodges* (2015) 576 U.S. ___ [192 L.Ed.2d 609].)  Today, stable social compacts that differ from the "traditional" husband-and-wife combination are protected.  This does not diminish the state's interest in protecting children and ensuring that their best interests are promoted, regardless of the actions of their parents.

The statute implemented by the judgment is carefully designed to avoid detriment to a child by the removal from his or her life of a true third parent.  Indeed, as one court explained, " '[d]etriment' was selected as a standard for permitting more than one presumed parent after the Governor vetoed a bill that would have made the decision dependent on the ' "best interest of the child." ' "  (*In re Alexander P.*, *supra*, 4 Cal.App.5th at p. 497.)  By heightening the standard that had to be met to declare a third parent, the Legislature was treading carefully.  But defendants do not--and cannot--deny that protecting children from detriment is a constitutionally valid public policy.

Instead, defendants make the following claim:

> "Assuming this Court holds that despite the conclusive presumption of Family Code section 7540, a child may have two fathers, it should require a court to take into account the state's interest in maintaining marriage in deciding whether it may be to the child's detriment to find that he or she has two parents. In other words, before a court may determine that a man with whom the mother had an affair while married to the child's conclusively presumed father under Family Code section 7540 may be a third parent under Family Code section 7612(c), it must first determine the effect such a determination will have on the marriage and on the stability of the subject child's life *if the third parent ultimately ruins that marriage*." (Italics added.)

15

First, we observe that defendants provide no authority for the implicit proposition that a *child's* detriment should be subordinated to a *marriage's* detriment. The adult parties to a marriage will either work out any marital challenges they face, or they will not. But generally, even if a marriage fails, the parties thereto will remain lawful parents of any child therefrom.

Second, the trial court *did* consider and address the status of the marriage as we outlined *ante*. Defendants paint plaintiff as a would-be homewrecker, and point out that they have other children together who could be impacted by a divorce. But the trial court found wife misled plaintiff, causing him to believe she and husband were separated. Before the child was born, all parties knew plaintiff was the biological father and, with that knowledge, defendants allowed plaintiff to parent the child and she bonded with him and his relatives. For defendants now to claim plaintiff poses such a severe threat to their marriage that he should be excluded despite the finding that his exclusion would be detrimental to the child rings hollow.

Third, the trial court explicitly found defendants "intend to remain married notwithstanding [husband's] acknowledgement that he was stressed by the affair" and that at trial "he expressed his renewed commitment to [his wife]."

Fourth, the trial court found plaintiff "articulated his goal to respectfully co-exist with" husband, to whom he had apologized for the situation he had unwittingly caused and had not been aware of husband's role in the child's life (due to concealment of facts by wife). Further, the court found plaintiff had no desire to supplant husband, but instead wanted "a plan that would allow [the child] to have a relationship with all parents," and husband acknowledged that if the men's positions were reversed, he, too, would want paternal recognition. Thus, the record shows both men understand and accept the difficulties inherent in the situation neither of them caused and, to their credit, both want the best outcome for the child.

16

Prior cases--albeit predating the three-parent statute--have emphasized that the burden of a paternity finding similar to the one in this case may or may not threaten a particular marriage, *depending on the facts*.  (See, e.g., *H.S. v. Superior Court* (2010) 183 Cal.App.4th 1502, 1507; *Craig L.*, *supra*, 125 Cal.App.4th at p. 51; *Brian C.*, *supra*, 77 Cal.App.4th at pp. 1216-1219; *Michael H. v. Gerald D*. (1987) 191 Cal.App.3d 995, 1009 [predating the three-parent statute and noting that on the facts of that particular case, "the significant interest of the state in protecting the welfare of [the child] is best served by upholding the conclusive presumption that Gerald D. is her legal father"].)

Thus, defendants' claim that the judgment under review unconstitutionally threatens their specific marriage lacks any factual basis.  And because defendants have not argued the statute is unconstitutional in all applications, they have forfeited any such claim.  (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.)

### 2.  *Protecting Paternal Rights*

In another sparsely reasoned claim, defendants contend that by recognizing plaintiff as a father, husband's status as a father was diminished.  Within this claim they also assert their joint parental rights are diminished.  These claims largely rest on the erroneous view about the "conclusive" presumption of husband's paternity that we have already rejected.

Defendants point out that " '[a] parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood.' " (*In re Marquis D*. (1995) 38 Cal.App.4th 1813, 1828.)  We agree.  But what defendants overlook is that plaintiff, too, is a parent.  He is the biological father of the child, who has consistently supported her both financially and otherwise.  As we have explained, the fact defendant husband is conclusively presumed to be the child's father does not exclude the possibility that she may have a second father.

17

Defendants do not challenge the facts showing that ousting plaintiff from the child's life will cause her detriment. Regardless of how it happened, the fact remains that the child's biological father is an important part of her life. For defendants to allow plaintiff to bond with the child and then cut him off when he tried to formalize the arrangement threatened detriment to the child.[3]

In short, we find no infringement of defendants' constitutional rights to parent the child (and their other children) on the facts as found by the trial court.

II

*Paternity Test*

Defendants contend the trial court had no legal basis to order a paternity test, in part because plaintiff lacked standing to request such a test.

Putting aside the fact that the notice of appeal was taken from the March 14, 2017 judgment and not from the much earlier February 16, 2016 testing order, the issue is moot because we cannot undo that which was done. (See *Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863; *In re Pablo D*. (1998) 67 Cal.App.4th 759, 761 ["we cannot rescind services that have already been received"].)

---

[3] Defendants *could have* prevented plaintiff from meeting the definition of a presumed father by excluding him from the child's life from the moment of birth. (See *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 942 [biological father's desire to establish a relationship with his child is not a fundamental liberty interest protected by the due process clause]; *In re Kiana A*. (2001) 93 Cal.App.4th 1109, 1114 ["the unwed biological father of a child conceived during and born into an existing marriage may be barred by the conclusive presumption from developing a relationship with the child against the married [couple's] wishes"]; *Rodney F*., *supra*, 61 Cal.App.4th at p. 239.) But they did not choose that avenue. They instead allowed plaintiff to form a bond with the child, pay support for her, hold her out as his own, receive her into his home, and introduce her to his close relatives, with whom she bonded during the first three years of her life. (See *Craig L.*, *supra*, 125 Cal.App.4th at p. 43 [couple could have excluded purported biological father, but did not].) The end result of this series of decisions by defendants was the situation facing the trial court.

18

Moreover, as the trial court found, and as the trial testimony showed, neither defendant disputed that plaintiff was the child's biological father. For over three years he treated the child as his daughter with the consent of defendants. As plaintiff's counsel correctly points out, the testing merely provided evidence that was cumulative of what everyone already knew. Thus, if the testing order was made in error, defendants have not shown any prejudice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

Finally, the statute under which the testing was ordered permits such testing in any action where paternity "is a relevant fact." (§ 7551.) Defendants argue that because of the conclusive presumption that the husband is the child's father (§ 7540) and the two-year period for testing provided by a connected statute (§ 7541, subd. (b)), there was no point to ordering genetic testing, that is, it would not resolve any relevant fact involved in this case. We have already answered that argument adversely to defendants.

### DISPOSITION

The judgment is affirmed. Defendants shall pay plaintiff's costs on appeal. (See Cal. Rules of Court, rule 8.278.)

/s/
Duarte, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Murray, J.

19